# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UTICA MUTUAL INSURANCE CO.,** | : | **CIVIL ACTION** |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| **ROHM AND HAAS CO., et al.,** | : | |
| Defendants. | : | **NO. 08-3812** |

GENE E.K. PRATTER, District Judge                                          FEBRUARY 5, 2010

## MEMORANDUM

Utica Mutual Insurance Company ("Utica") seeks a declaration as to the scope of its obligations, if any, to make defense and/or indemnity payments on behalf of Defendants Rohm and Haas Company ("Rohm and Haas") and Morton International, Inc. (both defendants collectively, "Morton") with respect to certain lawsuits against Morton (the "Underlying Suits"), some of which have already been settled. Utica began its litigation efforts with a complaint that sought the recovery of settlement payments made by Utica on Morton's behalf. Morton moved to dismiss part of that initial complaint and the Court held oral argument on the motion. Before the Court ruled on the Morton motion, Utica filed a First Amended Complaint.[1]

The First Amended Complaint contains 13 counts, which can be grouped into two general categories. Counts I through IX seek either a declaration that Utica has no obligation to make payments for defense or indemnity on behalf of Morton with respect to the Underlying Suits or that any such obligation is restricted or limited. Each of these nine counts presents a different ground upon which Utica claims such relief. Counts X-XIII present causes of action for the

---

[1] The current motion to dismiss the First Amended Complaint raises many of the same issues addressed during the oral argument on the initial complaint. Therefore, the Court references portions of the oral argument transcript where appropriate.

reimbursement of certain defense and/or indemnity costs that Utica already paid in some or all of the Underlying Suits.

Morton's Motion to Dismiss in Part the First Amended Complaint is now before the Court. For the reasons set forth below, the Court will grant Morton's Motion.

I.      STANDARD OF REVIEW

A Rule 12(b)(6) motion to dismiss tests the sufficiency of a complaint. Conley v. Gibson, 355 U.S. 41, 45-46 (1957). Although Rule 8 of the Federal Rules of Civil Procedure requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests," Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley, 355 U.S. at 47), a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. (citations omitted). Specifically, "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . ." Id. To survive a motion to dismiss, a complaint must allege "factual content [that] allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009).

The Court "must only consider those facts alleged in the complaint and accept all of those allegations as true." ALA, Inc. v. CCAIR, Inc., 29 F.3d 855, 859 (3d Cir. 1994) (citing Hishon v. King & Spalding, 467 U.S. 69, 73 (1984)); see also Twombly, 550 U.S. at 555 (stating that courts must assume that "all the allegations in the complaint are true (even if doubtful in fact)"). The Court must also accept as true all reasonable inferences that may be drawn from the

2

allegations, and view those facts and inferences in the light most favorable to the non-moving party. Rocks v. Philadelphia, 868 F.2d 644, 645 (3d Cir. 1989). The Court, however, need not accept as true "unsupported conclusions and unwarranted inferences," Doug Grant, Inc. v. Greate Bay Casino Corp., 232 F.3d 173, 183-84 (3d Cir. 2000) (citing City of Pittsburgh v. West Penn Power Co., 147 F.3d 256, 263 n.13 (3d Cir. 1998)), or the plaintiff's "bald assertions" or "legal conclusions," Morse v. Lower Merion Sch. Dist., 132 F.3d. 902, 906 (3d Cir. 1997).

## II. STATEMENT OF FACTS

For the purposes of this Motion to Dismiss, the facts alleged in the First Amended Complaint are considered to be true. Conley, 355 U.S. at 45. On that basis, the facts are as follows.

Utica and Morton-Norwich Products, Inc. entered into one-year general liability insurance contracts (the "Contracts") with effective dates of 3/31/78, 3/31/79, and 3/31/80, respectively. (1st A. Compl. ¶ 7.) Utica admits that it has not located complete copies of the Contracts,[2] but alleges that the Contracts include the following requirements: Morton must provide timely notice to Utica of any claims, suits, and occurrences; Morton is barred from assigning its rights under the Contracts; the Contracts cover only such bodily injury and property damage that takes place, or is caused by an occurrence, during the effective period of the Contracts; and that the Contracts

---

[2] One naturally problematic aspect of Utica's failure to present complete copies of the Contracts goes to the heart of Utica's claims. For example, if full copies of the Contracts are eventually located during the course of this litigation and if they include express reimbursement rights, as expressed the reimbursement provisions could be at odds with the Court's ruling on this motion. However, at the oral argument, counsel for Utica stated that this was a risk Utica was willing to take because Utica's position is that it is entitled to reimbursement even if the Contracts are silent with respect to reimbursement rights. (See Oral Argument Tr. at 47.)

3

do not apply to bodily injury or property damage that arises from the discharge, dispersal, release, or escape of pollutants. (See 1st A. Compl. ¶ 10-13.) Utica claims that Morton has, or may have, violated material terms and conditions of the Contracts by, among other things, failing to provide timely written notice of the Underlying Suits to Utica. (1st A. Compl. ¶ 39.)

Accordingly, Utica seeks a declaration as to whether Morton is entitled to defense or indemnity with respect to lawsuits arising out of (1) alleged exposures to asbestos at Weeks Island, Louisiana and Newark, California (the "Asbestos Suits"); (2) alleged bodily harm injury sustained by workers at a factory in Texas as a result of alleged exposure to toxic chemicals manufactured or sold by Morton or its predecessors (the "Brooks Suit"); (3) alleged bodily injury sustained by workers at a factory in New Jersey allegedly as a result of exposure to toxic chemicals manufactured or sold by Morton or its predecessors (the "Perez suit"); and (4) alleged contamination at the H.O.D. landfill in Antioch, Illinois allegedly caused by Morton or its predecessors (the "Antioch suit"). (See 1st A. Compl. ¶¶ 1, 15-19.) Utica also seeks recovery of defense and settlement payments already made in the Underlying Suits on the grounds that Morton's failure to re-pay such amounts constitutes either breach of an implied contract or unjust enrichment. (1st A. Compl. ¶ 1.)

### A. The Underlying Lawsuits

#### 1. The Asbestos Suits

Most of the Underlying Suits concern claims arising out of alleged exposure to asbestos caused by Morton at Weeks Island, Louisiana, a site owned by Morton and/or its affiliated companies. Some of the Underlying Suits also involve claims arising out of alleged exposure to asbestos caused by Morton at another site in Louisiana. Other Underlying Suits arise out of

4

alleged exposure to asbestos at the Morton Salt plant in Newark, California. (1st A. Compl. ¶ 15.)

Utica had agreed to pay a share of defense costs for the Asbestos Suits on behalf of Morton, subject to an express reservation of Utica's rights and defenses, which reservation was communicated to Morton. (1st A. Compl. ¶ 21.) Morton did nothing to make clear to Utica that it was not accepting that Utica had agreed to pay defense costs subject to this reservation of rights. (1st A. Compl. ¶ 21.)

Utica also agreed to contribute an allocated share of indemnity payments to resolve some of the Asbestos Suits. (1st A. Compl. ¶ 23.) This agreement was also based upon an express reservation of Utica's rights and defenses, which reservation was likewise communicated to Morton. (1st A. Compl. ¶ 23.)

### 2. The <u>Brooks</u> Suit

The <u>Brooks</u> suit deals with bodily injury claims arising out of alleged exposure to hazardous substances, allegedly manufactured by Morton's predecessors, at a factory in Texas. (1st A. Compl. ¶ 16.) Utica agreed to pay certain defense and/or indemnity costs on behalf of Morton in <u>Brooks</u>. That agreement was based on an express reservation of Utica's rights and defenses, which Utica communicated to Morton. (1st A. Compl. ¶ 27.) Again, Morton allegedly did nothing to make clear to Utica that it was not accepting that Utica agreed to pay defense and/or indemnity costs subject to this reservation of rights. (1st A. Compl. ¶ 27.)

### 3. The <u>Perez</u> Suit

The <u>Perez</u> suit deals with bodily injury claims arising out of alleged exposure to hazardous substances, allegedly manufactured by Morton's predecessors, at a factory in New

5

Jersey. (1st A. Compl. ¶ 17.) Utica agreed to pay certain defense and/or indemnity costs on behalf of Morton in Perez. That agreement was based on an express reservation of Utica's rights and defenses, which Utica communicated to Defendants. (1st A. Compl. ¶ 30.) Morton did nothing to make clear to Utica that it was not accepting that Utica agreed to pay defense and/or indemnity costs subject to this reservation of rights. (1st A. Compl. ¶ 30.)

          **4.    The Antioch Suit**

The Antioch Suit alleges that Morton is liable for response costs under Section 107 of the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. § 9607, for the investigation and remediation of environmental contamination at a waste site in Illinois. (1st A. Compl. ¶ 18.) Specifically, Waste Management of Illinois alleges in United States of America v. Waste Management of Illinois, Morton International, Inc. and Rohm & Hass Chemical Co., No. 06-C-6880 (N.D. Ill.), that it has spent, and will continue to spend, substantial amounts of money for the investigation and remediation of environmental contamination at the H.O.D. site in Antioch, Illinois. (1st A. Compl. ¶ 32.) Waste Management alleges that Morton is responsible for some of the environmental contamination and seeks contribution from Morton. (1st A. Compl. ¶ 32.)

The Antioch Suit settled for a confidential amount. (1st A. Compl. ¶ 33.) Utica agreed to fund the settlement of the Antioch Suit, subject to a reservation of its rights to seek reimbursement of the settlement payment. (1st A. Compl. ¶ 33.) Specifically, in an October 16, 2007 correspondence, Bernard Turi of Utica advised Ellen Friedell of Morton that Utica was "willing to fund a reasonable settlement of the [Antioch Suit]. . . but that Utica Mutual will adhere to its reservation of the right to recover all or any part of that amount from Morton/Rohm

and Haas pursuant to applicable law." (1st A. Compl. ¶ 33.) In this correspondence, Mr. Turi also advised Ms. Friedell that Utica:

> [R]eserves its right to recover, from Morton/Rohm and Haas, any defense fees and costs which may be expended as a result of Morton/Rohm and Haas' refusal to enter into a prudent settlement. Utica Mutual shares Rohm and Haas' desire to resolve the underlying litigation in a prudent and economical fashion, but Utica Mutual emphasizes that any such settlement would be subject to the coverage issues, and Utica Mutual reserves all of its rights in connection therewith.

(1st A. Compl. ¶ 33.)

### III. DISCUSSION

Utica's First Amended Complaint alleges that prior to making certain settlement and defense payments, Utica informed Morton that it was making the payments but was reserving the right to seek reimbursement, and that Morton did nothing to demonstrate that it was rejecting Utica's right to seek reimbursement. Utica argues that these allegations alone are sufficient to establish a plausible claim that Utica is entitled to reimbursement, both on a contract theory - where Morton's passive acceptance of the benefits Utica provided constituted consideration for a new (or modified) contract providing that Utica might seek reimbursement - and under an unjust enrichment theory - where Morton accepted benefits from Utica knowing that Utica believed Morton had accepted Utica's right to seek reimbursement.

In response, Morton argues that because Utica does not allege that the Contracts provide a right of reimbursement, either of defense costs or of settlement payments, or that Morton ever affirmatively agreed to grant Utica a right to seek reimbursement in any of the Underlying Suits, the First Amended Complaint fails as a matter of law to the extent it seeks reimbursement of the payments.

## A.      Reimbursement of Defense Costs and Settlement Payments (Counts X-XIII)

### 1.      Defense Costs

Courts around the country are generally split on whether an insurer has a right to reimbursement of payments the insurer makes to pay an insured's defense costs.  Compare Buss v. Superior Court, 939 P.2d 766, 776-78 (Cal. 1997) (approving of the right), with Gen. Agents Ins. Co. of Am. v. Midwest Sporting Goods Co., 828 N.E.2d 1092, 1102 (Ill. 2005) (disapproving of the right); Purdue Farms Inc. v. Travelers Cas. & Sur. Co. of Am., 448 F.3d 252, 258 (4th Cir. 2006) (same).  Courts in Illinois and Pennsylvania (the two jurisdictions whose laws may apply to this dispute),[3] however, have refused to recognize claims by insurers for the reimbursement of defense costs expended under a unilateral reservation of rights, absent a provision for such reimbursement in the applicable insurance policy.

In Midwest Sporting Goods, the Illinois Supreme Court held that an insurer may not "recover defense costs pursuant to a reservation of rights absent an express provision to that effect in the insurance contract between the parties."  Midwest Sporting Goods, 828 N.E.2d at 1104.  In that case, the policyholder was sued and tendered the suit to its insurance company.  Id. at 1093.  The insurance company responded with a letter stating that "without waiving any of its rights and defenses, *including the right to recoup any defense costs paid in the event that it is*

---

[3] Unless otherwise noted, Illinois and Pennsylvania law are in agreement on all substantive issues discussed in this opinion and without deciding the choice of law question(s), the Court will cite to opinions in both jurisdictions.  See Huber v. Taylor, 469 F.3d 67, 74 (3d Cir. 2006) ("If there is no conflict, then the district court sitting in diversity may refer interchangeably to the laws of the states whose laws potentially apply.").  Although Utica has taken the position that Illinois law governs this dispute, Utica has not posed any choice of law analysis, does not suggest how the results under one body of law would differ from that of the other, and Utica itself cites to the laws of both Illinois and Pennsylvania in its briefing.

*determined that the Company does not owe the Insured a defense in this matter,* the Company agrees to provide the Insured a defense . . . ." Id. at 1094 (emphasis in original). The policyholder did not respond to this letter and accepted the insurance company's payment of defense costs. The insurance company subsequently sued the policyholder seeking a declaration that it did not owe a duty to defend the underlying lawsuit and seeking recovery of all defense costs already paid in the underlying lawsuit.

Reversing the trial court and intermediate appellate court, both of which had found in the insurer's favor, the Illinois Supreme Court held that "if an insurer wishes to retain its right to seek reimbursement of defense costs . . . [it] is free to include such a term in its insurance contract. Absent such a provision in the policy, however, an insurer cannot later attempt to amend the policy by including the right to reimbursement in its reservation of rights letter." Id. at 1103. The court reasoned that allowing an insurer to reserve the right to seek reimbursement of defense costs "effectively places the insured in the position of making a Hobson's choice[4] between accepting the insurer's additional conditions on its defense or losing its right to a defense from the insurer." Id. at 1102. The court also noted that an insurer benefits by providing

---

[4] A "Hobson's choice" is often thought of as a choice between two unattractive options. In fact, the phrase refers to an apparently free choice when there is actually no real alternative, a "take it or leave it" proposition. See 2 Oxford English Dictionary 369 (4th ed. 1978). The phrase comes from Thomas Hobson (1544-1631), who operated a horse rental business in Cambridge, England. Although he kept a stable filled with horses, renters were forced to take only the horse closest to the door. That way, all of his horses would be rented, not just those horses perceived to be the best by customers. This led poet Thomas Ward in 1630 to coin the phrase: "Where to elect there is but one/'Tis Hobson's choice, - take that or none." See generally, William Safire, President Hobson, N.Y. Times, August 5, 1993, at A21.; Letter to the Editor, Origin of "Hobson's Choice," N.Y. Times, June 8, 1898.

a defense because it gets to control the litigation and it preserves its right to contest the duty to indemnify if the defense is ultimately unsuccessful. Id. at 1102-03. As a result, the court concluded that an insurer has no right to be reimbursed because providing a defense protects the insurer "at least as much as it is protecting its insured." Id. at 1103.[5]

The Pennsylvania Supreme Court has not yet ruled definitely on this issue, but both the Superior Court of Pennsylvania and the Court of Appeals for the Third Circuit have, both of which reached the same conclusion as Midwest Sporting Goods on similar grounds. See Am. & Foreign Ins. Co. v. Jerry's Sport Ctr. Inc., 948 A.2d 834, 849 (Pa. Super Ct. 2008)[6] ("A reservation of rights letter does not create a contract allowing an insurer to recoup defense costs from its insured, but rather, is a mean[s] to assert defenses and exclusions which are already set forth in the policy . . . [A]n insurer should not be permitted to unilaterally amend the policy by including the right to reimbursement in its reservations of rights letter.") (citing LA Weight Loss Ctrs., Inc. v. Lexington Ins. Co., No. 1560, 2006 WL 689109, at *6 (Pa. Ct. C.P. 2006)); Terra Nova Ins. Co. v. 900 Bar, Inc., 887 F.2d 1213, 1220 (3d Cir. 1989) (precluding an insurer who provides a defense under reservation of rights from recovering the cost of that defense from its

---

[5] At oral argument, Utica acknowledged the holding in Midwest Sporting Goods and stated that it had no quarrel with it because, at that time, Utica was not seeking reimbursement of defense costs. (See Oral Argument Tr. at 21.) Nonetheless, for reasons not explained by Utica, since the time of the oral argument, Utica filed its First Amended Complaint which includes a demand for reimbursement of defense costs. However, Utica has made no effort to explain how or why its previous position has changed or why Midwest Sporting Goods does not foreclose the claim.

[6] The Pennsylvania Supreme Court has agreed to hear an appeal in Jerry's Sport on the issue of "[w]hether an insurer is entitled to reimbursement of defense costs when a court has determined that the insurer had no duty to defend the insured and the insurer had reserved its right to reimbursement in a 'reservation of rights' letter?" See Jerry's Sport, 961 A.2d 53 (Pa. 2008). The Pennsylvania Supreme Court has not yet ruled on this question.

insured if it is later determined that there is no coverage).

In Terra Nova, the Court of Appeals for the Third Circuit, applying Pennsylvania law, predicted that the Pennsylvania Supreme Court would hold that an insurer does not have a unilateral reimbursement right, explaining that:

> A rule permitting such recovery would be inconsistent with the legal principles that induce an insurer's offer to defend under reservation of rights. Faced with uncertainty as to its duty to indemnify, an insurer offers a defense under reservation of rights to avoid the risks that an inept or lackadaisical defense of the underlying action may expose it to if it turns out there is a duty to indemnify. At the same time, the insurer wishes to preserve its right to contest the duty to indemnify if the defense is unsuccessful. Thus, such an offer is made at least as much for the insurer's own benefit as for the insured's. If the insurer could recover defense costs, the insured would be required to pay for the insurer's action in protecting itself against the estoppel to deny coverage that would be implied if it undertook the defense without reservation.

Terra Nova Ins. Co., 887 F.2d at 1219-20.

For these reasons, courts in Illinois and Pennsylvania have rejected the argument that an insurer's reservation of rights letter and the mere acceptance of the insurer's payments of defense costs by the insured creates an implied contact that may entitle the insurer to reimbursement.[7] See Midwest Sporting Goods, 828 N.E.2d at 1102 (noting the Hobson's choice that results from recognizing an implied contract); Jerry's Sport, 948 A.2d at 848 (rejecting the argument "that [the insurer's] undertaking of the defense pursuant to its reservation of rights letters created an

---

[7] In its opposition brief, Utica argues that because there is no coverage for the Underlying Suits, the only contract or other arrangement between Utica and Morton is the agreement by Utica to pay Morton's defense and indemnity costs, subject to its right to seek reimbursement and, as a result, the cases cited by Morton are inapplicable. However, regardless of how Utica labels its relationship with Morton, the cases cited above from Illinois and Pennsylvania directly address situations like this in which an insurer seeks to recover on either or both implied contract and unjust enrichment grounds. In fact, in Midwest Sporting Goods, the insurer made this same argument unsuccessfully. Midwest Sporting Goods, 828 N.E.2d at 1098 ("the gravamen of [the insurer's] response is that there is no contract governing the relationship . . .").

11

implied contract" because undertaking the defense was really an attempt to unilaterally modify the written insurance contract).

These courts also rejected recovery of defense payments under an unjust enrichment theory. The court in Midwest Sporting Goods observed that an unjust enrichment claim requires a showing that the defendant obtained a benefit entirely at the plaintiff's expense. The court noted that is not the situation when a plaintiff insurance company has paid a defendant insured's defense costs because, as previously noted, an insurer receives a benefit from making defense payments - namely, the insurer will "avoid the risks that an inept or lackadaisical defense of the underlying action may expose it to if it turns out there is a duty to indemnify" and also will "preserve its right to contest the duty to indemnity if the defense is unsuccessful." Midwest Sporting Goods, 828 N.E.2d at 1102-03 (citing Terra Nova, 887 F.2d at 1219-20)); Jerry's Sport, 948 A.2d at 848 (rejecting an unjust enrichment claim and noting that the decision to defend benefitted the insurer "to the extent that it maintained control over the defense and could take the opportunity to mitigate any potential future indemnification burdens")

The claims in this case are the same types of claims considered in Midwest Sporting Goods, Jerry's Sport, and Terra Nova. Given that no copy of the Contracts seems to be available, it is understandable that Utica does not allege that the Contracts provide it with a right to reimbursement of defense costs. Nor does Utica allege that Morton actually agreed to modify the Contracts to grant Utica a right to seek reimbursement of defense costs in any of the Underlying Suits. Rather, Utica alleges that Morton's silence in response to Utica's reservation of rights created a new, implied contract between the parties. But this theory has been soundly rejected by courts: a reservation of rights cannot create a contract allowing an insurer to recoup defense costs

12

from its insured because the purpose of a reservation of rights is to assert defenses and exclusions already set forth in the insurance contract. This result is not unreasonable, given the dynamic of the insurer-insured relationship, even where the insured is more commercially powerful than an individual, non-corporate consumer. In the first instance, the insurer is well situated to expressly include its reimbursement rights in the insurance contract. Failing that, an insurer can act to achieve certainty as to the insured's position regarding a reservation of rights, a modification of the otherwise silent contract to address reimbursement, or creation of a new contract altogether. The point of the case law is to reject the power of the insurer to unilaterally award itself a new contract right while its insured is "on the ropes," unless the insured expresses its agreement.

In addition, Morton has not been unjustly enriched. By providing Morton a defense, Utica obtained the right to control the course of the litigation of the Underlying Suits and affect their outcomes. This benefitted Utica because it avoided the risk that Morton, the insured, would present a poor defense, which would in turn expose Utica to the risk of paying a higher indemnity payment than it otherwise would have paid had it not controlled the litigation.

Thus, because there can be no implied contract for reimbursement of defense costs and because Utica has not been unjustly enriched, the Court holds that Utica cannot recover the defense payments for any of the Underlying Suits that have terminated.

### 2. Settlement Payments

The question of whether an insurer is entitled to reimbursement for settlement payments has not received extensive substantive judicial scrutiny. A leading case on the issue is <u>Texas Ass'n of Counties County Gov't Risk Mgmt. Pool v. Matagorda County</u>, 52 S.W.3d 128 (Tex. 2000). In that case, the Supreme Court of Texas held that a policyholder's "silence in response

13

to [an insurer's] reservations-of-rights letter cannot support an implied agreement to reimburse settlement costs." Matagorda County, 52 S.W.3d at 133.[8] The court reasoned that the insurer could only reserve rights that were expressly in the insurance policy, and the policy in question did not contain such a right of reimbursement. Id. at 131 ("[A] unilateral reservation-of-rights letter cannot create rights not considered in the insurance policy."). Otherwise, the court noted that the insured would be in an untenable position where it is forced "to choose between rejecting a settlement within policy limits or accepting a possible financial obligation to pay an amount that may be beyond its means, at a time when the insured is most vulnerable." Id. at 135. The court also held that the insured was not unjustly enriched because insurers are in the best position to assess coverage disputes and "are better positioned to handle this risk [that coverage does not apply], either by drafting policies to specifically provide for reimbursement or by accounting for the possibility that they may occasionally pay uncovered claims in their rate structure." Id. at 136.[9]

The reasoning of the Texas Supreme Court regarding settlement payments is similar to and compatible with the reasoning in Midwest Sporting Goods and Jerry's Sport regarding defense costs. That reasoning is persuasive both as to its own logic and because of its consistency with the legal analysis of the issues vis-à-vis reimbursement of defense costs. The strategic, risk/reward analysis supporting the decision of an insurer to pay defense costs is very

---

[8] State court decisions in Illinois and Pennsylvania regarding the reimbursement of defense costs cite Matagorda County with approval. See Midwest Sporting Goods, 828 N.E.2d at 1101; LA Weight Loss Ctrs., Inc. v. Lexington Ins. Co, No. 1560, 2006 WL 689109, at *6 (Pa. Ct. C.P. 2006).

[9] The Texas Supreme Court recently reaffirmed this holding in Excess Underwriters at Lloyd's, London v. Frank's Casing Crew & Rental Tools, Inc., 246 S.W.3d 42 (Tex. 2008).

14

much the same analysis that would lead to the decision to pay a settlement, rather than waiting passively for (or risking) an adverse judgment. When an insurer funds a settlement, the insurer benefits because settlement ends the obligation to pay defense costs, caps the insurer's risk of liability, and may insulate an insurer from a future bad faith claim by the insured. If courts added to this list of benefits for the insurer by actively grafting on to the insurer-insured relationship an implied right to reimbursement for settlement payments in this situation, an insured would be left without any commercially reasonable choices. The insured would be forced to either accept the insurer's unilateral conditions on funding the settlement, fund the settlement itself, or forego settlement altogether thereby risking loss of a potential reasonable settlement within policy limits. Thus, for essentially the same reasons that Utica cannot recover its payments of defense costs, and in the absence of a Contract provision (or even reason to believe that such a provision was included in the now-missing Contracts), Utica also cannot recover settlement payments for any of the Underlying Cases that have terminated.

The cases cited by Utica do not alter this result. In <u>Sears Roebuck & Co. v. Royal Surplus Lines Ins. Co.</u>, 61 Fed. Appx. 280 (7th Cir. March 14, 2003) (non-precedential) (applying Illinois law), a consumer filed a personal injury lawsuit against Sears alleging that he was injured while riding a bicycle that he had purchased from Sears. Sears tendered the defense of the lawsuit to Royal, the insurer of the bicycle manufacturer, and requested that Royal indemnify Sears for any liability. In response, Royal advised Sears that it was likely that no coverage existed because Sears was not added as an additional insured under the manufacturer's most recent insurance policy. Ultimately, the parties to the underlying suit agreed to settle the case for $650,000 and split the settlement payment.

15

Sears then filed suit against Royal seeking the recovery of the $325,000 that it contributed to the settlement. Sears, 61 Fed. Appx. at 282. Royal filed counterclaims against Sears seeking reimbursement of its $325,000 settlement contribution and for a declaration that it had no liability to Sears for attorneys' fees. Id. The district court granted summary judgment in favor of Royal, finding that Royal had no duty to indemnify Sears, which was not an additional insured under Royal's policy with the bicycle manufacturer. On appeal, the Seventh Circuit Court of Appeals affirmed, holding that Royal was entitled to seek recovery of its $325,000 indemnity payment.

Relying on Sears, Utica contends that because an insurer's obligation to pay extends only to an insured, Utica is entitled to seek recovery of the amount it paid to Morton, which it alleges is a non-insured, in settlement of the Antioch Suit and other Underlying Suits. The Court finds Sears unpersuasive here. Sears is a non-precedential opinion[10] that was decided two years before the Illinois Supreme Court's decision in Midwest Sporting Goods, the reasoning of which this Court did find persuasive with respect to an insurer's claims for reimbursement of defense costs. In addition, even if its non-precedential status could or should be ignored, Sears differs from this case because the parties in Sears actually agreed to split the settlement payment and expressly agreed to resolve the coverage issue later. Id. at 284-85 ("the record demonstrates that [the parties] each agreed to pay $325,000 in settlement of the [underlying] action, subject to the

---

[10] Of course, the role of non-precedential opinions is, at best, problematic. The various circuits have developed their own internal rules, practices, protocols and even sentiments about when and why to issue an "NPO" and to what use they can or should be put. The most frequent explanation and rationale for non-precedential opinions is that they are an essential tool for docket management. See generally, Amy E. Sloan, If You Can't Beat 'Em, Join 'Em: A Pragmatic Approach to Nonprecedential Opinions in the Federal Appellate Courts, 86 Neb. L. Rev. 895 (2008).

condition that the two parties would later resolve their coverage dispute over whether [the policy] covered the settlement"). In contrast, here, there is no allegation that Morton entered into any bilateral agreement with Utica regarding the settlement payments. Accordingly, Sears fails to instruct here either factually or legally.

Utica also relies on Essex Ins. Co. v. RMJC, Inc., 306 Fed. Appx. 749 (3d Cir. Jan. 7, 2009) (non-precedential). In that case, the Court of Appeals for the Third Circuit acknowledged the continuing efficacy of Terra Nova for treatment of defense costs, Essex, 306 Fed. Appx. at 755,[11] and then predicted that the Pennsylvania Supreme Court would allow an insurer, under a reservation of rights, to recover payments where a case has proceeded to its conclusion by trial and the insurer has erroneously paid a final judgment. But even if Essex was not also another non-precedential opinion and hence of at most tightly circumscribed use, it arises in the context of a case that went to final judgment following trial. Here, in contrast, the Complaint does not allege that Utica paid indemnity claims in any lawsuits that went to judgment. Instead, here, Utica, through chosen counsel, helped negotiate settlements and funded them.

As the Third Circuit noted in Essex, there is good reason to distinguish in this context between payments to settle and payments to satisfy a judgment because the insurer's "satisfaction of the . . . judgment protect[s] the interests of all interested parties." Id. at 755 (noting that the incentive structure for insurers to provide vigorous and effective defenses "would not be disrupted by permitting an insurer exhaustively to defend its insured under a reservation of rights,

---

[11] The court in Essex also acknowledged without criticism the district court opinion in Coregis Ins. Co. v. Law Offices of Carole F. Kafrissen, P.C., 140 F. Supp. 2d 461 (E.D. Pa. 2001), which held that an insurer could not recover a payment made to settle a malpractice suit. Id.

pay a resultant judgment, and then litigate its duty to indemnify"). When an insurer pays a final judgment, neither the insurer nor the insured have to pay the additional post-judgment interest accruing while they litigate the duty of indemnification. Id. In addition, parties often must depend on the tug-of-war of the adversary system to resolve a case on the merits and to reach a just outcome for all concerned. In contrast to making defense or settlement payments, when an insurer pays a final judgment following trial, there arguably is less of a one-sided benefit to the insurer because the insurer has defended throughout the litigation, presumably at great expense, and judgment forecloses the possibility that the outcome of the litigation was dictated by the insurer's presumed pursuit of its interests, rather than by the merits of the case. Therefore, it can be more reasonable to allow an insurer to recover these sums paid in judgment (following some express warning to the insured of the insurer's intent to demand reimbursement) if it is later determined there is no coverage.

As emphasized above, Utica could have included in the Contracts express provisions for the reimbursement of defense costs and settlement payments (and, if it had included such provisions, Utica could certainly be expected to preserve, in some fashion, copies of its Contracts or of its standard language), or reached a subsequent bilateral agreement with Morton regarding these payments. It did neither. As a result, Utica cannot unilaterally declare an amendment to the insurance contracts or create new contracts and assume that Morton's silence amounts to an acceptance of these new, material terms.

  **B.**  **Relief Sought in Relation to Terminated Cases (Counts I-IX)**

As discussed above, Counts X through XIII fail to state claims for reimbursement of defense costs or settlement payments. Accordingly, Counts I through IX cannot support any

18

claim for reimbursement in the Underlying Suits that have terminated, as there can be no ongoing or future obligation to make defense or settlement payments in terminated cases. Therefore, these claims are dismissed to the extent they relate to the Underlying Suits that have terminated.[12]

IV. CONCLUSION

For the foregoing reasons, the Court grants Morton's Motion to Dismiss the First Amended Complaint in Part. An appropriate Order will follow.

BY THE COURT:

S/Gene E.K. Pratter
GENE E. K. PRATTER
UNITED STATES DISTRICT JUDGE

---

[12] Because the First Amended Complaint fails on the grounds discussed above, the Court need not consider Morton's alternative argument that Utica's reimbursement claims are barred by the application of the voluntary payment doctrine.